MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
215.963.5000 (phone)
215.963.5299 (fax)
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUPERIOR GROUP, INC., formerly known as CAWSL CORP., a Pennsylvania Corporation; SUPERIOR TUBE COMPANY, a Pennsylvania Corporation; ANCHOR/DARLING VALVE COMPANY, a Pennsylvania Corporation; and DREVER COMPANY, a Pennsylvania Corporation, <br><br> *Plaintiffs,* <br><br> v. <br><br> THE TRAVELERS INSURANCE COMPANY, a Connecticut Corporation; TRAVELERS CASUALTY AND SURETY COMPANY, a Connecticut Corporation; THE TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation; and THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut Corporation, <br><br> *Defendants.* | **Civil Action No.** <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT; BREACH OF CONTRACT; AND OTHER RELIEF** <br><br><br> **Jury Trial Demanded** |

Plaintiffs Superior Group, Inc. ("SGI"), formerly known as CAWSL Corp., a Pennsylvania corporation, Superior Tube Company, Inc. ("STC"), a Pennsylvania corporation, Drever Company ("Drever"), a Pennsylvania corporation, and Anchor/Darling Valve Company ("Anchor Darling"), a Pennsylvania corporation (collectively, "plaintiffs") for their complaint, upon knowledge as to their own acts and information and belief as to the acts of all others, allege as follows:

1

## *NATURE OF THIS ACTION*

1.      This is an action for breach of contract, bad faith, declaratory judgment, and ancillary relief against The Travelers Insurance Company, Travelers Casualty and Surety Company, The Travelers Indemnity Company, and The Travelers Indemnity Company of Connecticut (collectively "defendants" or "Travelers") under insurance policies (the "Insurance Policies") issued by defendants to plaintiffs SGI and STC that cover plaintiffs against legal liability and which provide for a defense and  the reimbursement of defense costs for, among other things, lawsuits against additional named insureds Drever and Anchor Darling, alleging bodily injury, including personal injury and death, as a result of exposure to asbestos-containing products allegedly designed, distributed or sold by these companies (respectively, the "Drever Asbestos Suits" and the "Anchor Darling Asbestos Suits" and, collectively, the "Asbestos Suits").

2.      Drever seeks declaratory judgment and damages against defendants for breach of contract under the Insurance Policies in connection with the Drever Asbestos Suits.   Drever also seeks damages against defendants for: (i) failure or refusal fully or timely to meet obligations to pay Drever's costs and expenses of investigation and defense for legal liabilities that have been, and may in the future be, imposed by law upon plaintiffs in connection with the Drever Asbestos Suits, or (ii) having engaged in other breaches of insuring obligations, all in connection with the Drever Asbestos Suits.

3.      Drever also seeks a declaration that the defendants are obligated pursuant to the terms of their insurance contracts fully and timely to pay or reimburse the costs and expenses including, without limitation, the costs of investigation, defense and legal liabilities arising from or in connection with the Drever Asbestos Suits.

4.      Drever also seeks a declaration and order against defendants, pursuant to the terms of the Insurance Policies, that defendants are required fully and timely to reimburse defense costs and indemnify plaintiffs including payment of judgments and settlements in connection with the Drever Asbestos Suits.

5.      SGI, STC, and Drever also seek declarations that (i) the Drever Asbestos Suits constitute one "occurrence" under the terms of the Insurance Policies; (ii) the Insurance Policies require the payment of a retrospective premium on a "per occurrence" basis; (iii) only one retrospective premium for the Drever Asbestos Suits is due under all of the Insurance Policies; and (iv) the retrospective premium obligation for the Drever Asbestos Suits under the Insurance Policies has been satisfied by payment and acknowledged by defendants.

6.      SGI, STC, and Anchor Darling also seek declarations that (i) the Anchor Darling Asbestos Suits respectively constitute one "occurrence" under the terms of the Insurance Policies; (ii) the Insurance Policies require the payment of a retrospective premium on a "per occurrence" basis; and (iii) only one retrospective premium for the Anchor Darling Asbestos Suits is due under all of the Insurance Policies.

7.      Plaintiffs also seek at least the following declarations as to their rights under the Insurance Policies, in accordance with the contractual provisions of the policies, insuring obligations implied or imposed by law, and plaintiffs' reasonable expectations:

A.      That the Insurance Policies are governed by the substantive law of the Commonwealth of Pennsylvania;

B.      That, under governing Pennsylvania law, each Asbestos Suit "triggers" all Insurance Policies from the date of first alleged exposure to any asbestos-containing product up

through and including the date of discovery, or "manifestation" of an asbestos-related disease, as provided for in *J.H. France Refractories Co. v. Allstate Ins. Co.,* 626 A.2d 502 (Pa. 1993);

       C.     That the policyholder, under the governing law of the Commonwealth of Pennsylvania, decided by *J.H. France, supra,* may select the policy or policy year to which to assign or allocate Asbestos Suit-related loss;

       D.     That, in the case of an insurer reserving its rights or refusing timely or fully to accept defense and indemnity obligations without reservation, the policyholder may defend and settle Asbestos Suits in its discretion, without the consent or concurrence of the insurer;

       E.     That, in the case of a claimed ambiguity in any Insurance Policy, such ambiguity shall be construed in favor of coverage; and

       F.     That defense costs for the Asbestos Suits are supplemental under all applicable Insurance Policies, and the payment of defense costs does not erode or impair any limit of liability of any of such Insurance Policies.

       8.     The Drever Asbestos Suits have been timely tendered to defendants for coverage. Despite timely notice and tender of the Drever Asbestos Suits, defendants have (i) failed or refused fully or timely to investigate the Drever Asbestos Suits on behalf of their insured, and (ii) failed or refused fully or timely to defend or agree to pay for the cost of defense and settlement of the Drever Asbestos Suits, as required by the Insurance Policies, or have otherwise breached their insuring obligations. Among other things, while agreeing to "participate" in the defense of certain Drever Asbestos Suits, defendants have, by correspondence responding to such notice and tender, fully reserved their rights to deny coverage for such Drever Asbestos Suits, and have breached their insuring obligations by, among other things (i) agreeing only to pay a "share" of

such defense, which is contrary to governing Pennsylvania law; (ii) asserting that the defense can only be performed at the request of or with the approval of Travelers, which is contrary to governing Pennsylvania law; (iii) reserving rights with respect to issues of allocation and contribution, which is contrary to governing Pennsylvania law; (iv) taking the position that Travelers is not responsible for any bodily injury which took place prior to the dates of issuance of its applicable policies, which is contrary to governing Pennsylvania law; (v) asserting that any payment that may be made by Travelers is subject to retrospective premiums, deductibles and other items in the applicable policies, which have been fully satisfied as to the Drever Asbestos Suits; (vi) purporting to assert that Travelers has the ability to seek and demand reimbursement of the cost of defense, which is contrary to governing Pennsylvania law; and (vii) refusing to commit to pay for settlements and judgments within policy limits.  In addition, while purporting to "participate" in Drever's defense, defendants have in fact neither timely nor fully done so and have not in fact paid any Drever defense costs tendered for payments.

9.      Drever further seeks damages for breach of contract against Travelers for its failure or refusal fully to meet its obligations to pay plaintiffs' costs and expenses of investigation and defense for legal liabilities that have been, and may in the future be, imposed by law upon plaintiffs, or have engaged in other breaches of their insuring obligations, all in connection with the Drever Asbestos Suits.

10.     Plaintiffs also seek remedies pursuant to Pennsylvania statutory law and applicable common law doctrines.

11.     Plaintiffs have performed all acts necessary under the Insurance Policies identified in this complaint, specifically including payment of premiums and notice and tender of claims. All conditions to defendants' performance have been satisfied or performed by plaintiffs, or their

performance is or has been waived or excused by the conduct of these defendants or by operation of law.

12.     Drever, under legal compulsion, has defended against and has settled the Drever Asbestos Suits.  These expenses are covered in full by one or more of the Insurance Policies issued by defendants.  These defendants dispute their obligations under the Insurance Policies for Drever Asbestos Suits.

13.     The amount of loss sought against defendants for the Drever Asbestos Suits is sufficient to invoke the coverages of each of the defendants' Insurance Policies pursuant to governing law and the "all sums" rule for allocation of loss.  *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502, 508-09 (Pa. 1993).

14.     The Drever Asbestos Suits have been timely tendered to the defendants, and insurance coverage has been sought under the defendants' Insurance Policies.  Defendants have to date failed timely or fully to pay for the cost of defense of the Drever Asbestos Suits, as required by contract, and have otherwise breached the contracts of insurance they sold or issued to plaintiffs.

### *JURISDICTION*

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

### *VENUE*

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) because defendants are subject to this Court's personal jurisdiction as a result of being licensed to do, and/or are doing business in this judicial district.

### PARTIES

17.     SGI, formerly known as CAWSL Corp., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. At all times pertinent to this complaint, SGI had its principal place of business in Montgomery County, Pennsylvania, in this judicial district.

18.     STC is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. At times pertinent, STC had its principal place of business in Montgomery County, Pennsylvania, in this judicial district.

19.     Drever is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Drever designed, sold and distributed industrial products. At all times pertinent to this complaint, Drever was a subsidiary of STC or SGI and was, and is, a "named insured" under the Insurance Policies.

20.     Anchor Darling is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Anchor Darling designed, sold and distributed valves. At all times pertinent to this complaint, Anchor Darling was, and is, a "named insured" under the Insurance Policies.

21.     Defendant The Travelers Insurance Company is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. The Travelers Insurance Company regularly conducts business throughout the United States, including in the Commonwealth of Pennsylvania and in this judicial district.

22.     Defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty & Surety Company, is an insurance company incorporated under the laws of the State of

Connecticut with its principal place of business in Hartford, Connecticut.  Travelers Casualty and Surety Company regularly conducts business throughout the United States, including in the Commonwealth of Pennsylvania and in this judicial district.

23.     The Travelers Indemnity Company is an insurance company organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  The Travelers Indemnity Company regularly conducts business throughout the United States, including in the Commonwealth of Pennsylvania and in this judicial district.

24.     The Travelers Indemnity Company of Connecticut, formerly known as The Travelers Indemnity Company of Rhode Island, is an insurance company organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  The Travelers Indemnity Company of Connecticut regularly conducts business throughout the United States, including in the Commonwealth of Pennsylvania and in this judicial district.

### *INSUREDS' DAMAGES*

25.     Drever and Anchor Darling have been named as defendants in numerous suits filed in various federal and state courts of the United States and the Commonwealth of Pennsylvania, including courts within this judicial district, in which the claimants allege bodily injury, sickness or disease, including death, purportedly resulting from exposure to asbestos-containing products designed, distributed or sold by Drever or Anchor Darling and/or alleging exposure to asbestos-containing products for which plaintiffs seek to hold Drever or Anchor Darling liable (respectively, the "Drever Asbestos Suits" and the "Anchor Darling Asbestos Suits," and, collectively, the "Asbestos Suits").

26.     The Drever Asbestos Suits have been tendered to defendants, and Drever has demanded that defendants meet their coverage obligations under the Insurance Policies, including to defend or reimburse defense and indemnity costs related to the Drever Asbestos Suits. Defendants have failed or refused timely or fully to reimburse defense costs or agree to indemnify Drever without reservation in connection with the Drever Asbestos Suits.

27.     Drever has vigorously defended the Drever Asbestos Suits.  Drever has denied the allegations therein, but has been forced to settle certain Drever Asbestos Suits.  The monies spent and to be spent in response to the Drever Asbestos Suits are covered under the Insurance Policies.  Based on the allegations of the Drever Asbestos Suits, there is coverage under the Insurance Policies sold or issued by defendants, which are, accordingly, required to pay or reimburse Drever's costs of investigation, defense, and settlement.

### *THE INSURANCE POLICIES*

28.     Defendants issued at least the following policies to STC which name as additional insureds Drever and Anchor Darling, and which are responsive to the Drever Asbestos Suits and the Anchor Darling Asbestos Suits:

| Policy Number | Policy Period |
|---|---|
| TRNSL 112T142-3-74 | 1/22/1974 to 5/1/1978 |
| TRNSL 164T401-3-78 | 5/1/1978 to 5/1/1979 |
| TRSLG 112T143-5-79 | 5/1/1979 to 5/1/1980 |
| TREE SLG 112T143-5-80 | 5/1/1980 to 5/1/1981 |

| Policy Number | Policy Period |
|---|---|
| TRNSL 164T401-3-80 | 5/1/1980 to 5/1/1981 |
| TREE SLG 112T143-5-81 | 5/1/1981 to 5/1/1982 |
| TRNSL 164T401-3-81 | 5/1/1981 to 5/1/1982 |

29.    Defendants issued at least the following policies to SGI which name as additional insureds Drever and Anchor Darling, and which are responsive to the Drever Asbestos Suits and the Anchor Darling Asbestos Suits:

| Policy Number | Policy Period |
|---|---|
| TREE SLG 112T143-5-82 | 5/1/1982 to 5/1/1983 |
| TRNSL 164T401-3-82 | 5/1/1982 to 5/1/1983 |
| TREE SLG 112T143-5-83 | 5/1/1983 to 5/1/1984 |
| TRNSL 164T401-3-83 | 5/1/1983 to 5/1/1984 |
| TREE SLG 112T143-5-84 | 5/1/1984 to 5/1/1985 |
| TRNSL 164T401-3-84 | 5/1/1984 to 5/1/1985 |
| TREE SLG 112T143-5-85 | 5/1/1985 to 5/1/1986 |
| TRNSL 164T401-3-85 | 5/1/1985 to 5/1/1986 |

30.     The Insurance Policies consist of multiple-page contracts composed of printed or typed forms.  The Insurance Policies are integrated written contracts that must be construed as a whole and no policy term or condition may be viewed in isolation.  Furthermore, each contract must be construed in order to achieve its purpose, which is to provide insurance protection.  Any ambiguity must be construed in favor of coverage, and any reasonable interpretation by the insureds or any individual insured must be adopted.

31.     The Insurance Policies under which relief is sought herein were issued to or in the name of the entities identified herein, or otherwise provide comprehensive coverage to the plaintiffs, their subsidiaries, affiliates, and joint ventures.

32.     The Insurance Policies require defendants to defend all suits alleging bodily injury during the policy period, including specifically the Asbestos Suits, and the cost of defending and investigating the Asbestos Suits is in addition to the applicable limit of liability.

33.     The Insurance Policies also require defendants to pay "all sums" which the insureds shall become legally obligated to pay by reason of liability imposed by law on the insured for damages because of bodily injury to which the policy applies, either by way of judgment or settlement.

34.     The Insurance Policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

35.     The Insurance Policies also provide that "[f]or purposes of determining the limit of the company's liability, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

36.    The Insurance Policies each contains a "Premium Computation Endorsement" and/or "Development of Premium Endorsement" provision which sets forth the premium to be charged under the Insurance Policies, and each of the Insurance Policies is accompanied by a letter agreement setting forth, among other things, the specific terms relating to the premium and its calculation and providing for a loss limitation or "stop loss" computed and expressed on a per occurrence basis.

37.    Pennsylvania law governs the interpretation of the Insurance Policies.  Under Pennsylvania law, all of the Drever Asbestos Suits constitute one occurrence and all of the Anchor Darling Asbestos Suits constitute one occurrence. *Liberty Mutual Ins. Co. v. Treesdale, Inc.*, 418 F. 3d 330 (3d Cir. 2005).  In accordance with the terms of the Insurance Policies, only one retrospective premium is due for the Drever Asbestos Suits and one retrospective premium is due for the Anchor Darling Asbestos Suits.

38.    CAWSL Corp., now known as SGI, previously paid to Travelers approximately $225,032 in retrospective premiums under the Insurance Policies for Drever Asbestos Suits. Travelers refunded to CAWSL Corp. approximately $175,032 of that amount and kept the difference as the sole required retrospective premium payment for Drever Asbestos Suits.

39.    The retrospective premium obligation under the all Insurance Policies for all Drever Asbestos Suits has been satisfied by the retrospective premium that Drever has paid to Travelers.

40.    Defendants dispute plaintiffs' position concerning the number of "occurrences" presented by the Drever Asbestos Suits and by the Anchor Darling Asbestos Suits for purposes of determining plaintiffs' obligations to pay retrospective premiums under the Insurance Policies.

41.     Plaintiffs have satisfied all terms and conditions of the Insurance Policies, including without limitation payment of premiums and notice and tender of claims, and are entitled to the full benefit of said insurance.

42.     The allegations asserted against Drever in the Drever Asbestos Suits, the damages sought therein, and the costs of investigation and defense of the Drever Asbestos Suits are covered by the Insurance Policies issued to plaintiffs by defendants, and do not come within any exception to or exclusion from coverage.

43.     Defendants are obligated to pay in full plaintiffs' costs of defense and investigation and plaintiffs' legal liabilities, including all sums spent in settlement, in connection with the Drever Asbestos Suits. *Babcock & Wilcox Co. v. American Nuclear Insurers*, No. 2 WAP 2014, 2015 WL 4430352 (Pa. July 21, 2015).  However, defendants have failed or refused fully or timely to honor or to undertake their contractual obligations to Drever.

44.     Defendants' conduct is willful, wanton, and/or malicious, is without basis in law or fact, and has been and is undertaken by defendants solely to protect their own pecuniary interests at the expense of the interests of plaintiffs, and in violation of plaintiffs' known rights. Defendants' conduct constitutes a violation of 42 Pa. Stat. Ann. § 8371 ("§ 8371").

45.     As a direct and natural consequence of defendants' violation of § 8371, plaintiffs are entitled to money damages in an amount to be proven at trial.

46.     As a direct and natural consequence of defendants' violation of § 8371, plaintiffs are entitled to exemplary damages in an amount sufficient to deter future violations of § 8371 by defendants and others, as well as attorney fees and costs and interest on plaintiffs' claims as set forth in § 8371(1).

47.     An actual controversy exists between plaintiffs and defendants regarding the rights and obligations of plaintiffs, including, without limitation, the extent of plaintiffs' obligations to pay retrospective premiums under the Insurance Policies for the Drever Asbestos Suits and the Anchor Darling Asbestos Suits.

### *COUNT I*
### *Breach of Contract*
### *(Drever)*

48.     Plaintiffs repeat and reallege paragraphs 1 through 47 as if fully set forth herein.

49.     Drever has timely notified defendants of the Drever Asbestos Suits and has properly and timely tendered the defense and indemnity of such Asbestos Suits pursuant to the terms of the relevant Insurance Policies and applicable law.

50.     Defendants have failed and refused fully or timely to investigate, fully or timely to defend Drever, fully or timely to reimburse Drever's defense and investigation costs, or fully to acknowledge their insuring obligations to Drever.

51.     By their failure and refusal fully or timely to investigate and defend on behalf of Drever, fully or timely to reimburse Drever's defense and investigation costs, or fully or timely to acknowledge their insuring obligations to Drever, these defendants have breached their contracts of insurance with Drever.

52.     As a direct result of the foregoing breaches of contract, Drever has suffered and is entitled to recover money damages in an amount to be proven at trial.

### *COUNT II*
### *Breach of Implied Covenant of Good Faith and Fair Dealing*
### *(Drever)*

53.     Plaintiffs repeat and reallege paragraphs 1 through 52 as if fully set forth herein.

54.     The Insurance Policies contain an implied covenant of good faith and fair dealing.

55.     By their failure and refusal fully or timely to investigate and defend on behalf of Drever, fully or timely to reimburse Drever's defense and investigation costs, or fully or timely to acknowledge their obligations to Drever, these defendants have breached their contracts of insurance with Drever, including without limitation the implied covenant of good faith and fair dealing contained in the Insurance Policies.

56.     Along with their failure and refusal fully or timely to investigate and defend on behalf of Drever, fully or timely to reimburse Drever's defense and investigation costs, or fully or timely to acknowledge their obligations to Drever, these defendants have engaged, and continue to engage in, the following improper acts:

A.     Refusing to acknowledge receipt of proper and timely notice and tender of the Drever Asbestos Suits;

B.     Refusing timely or without reservation to acknowledge that they must defend and indemnify completely against the Drever Asbestos Suits;

C.     Failing to provide prompt, reasonable or consistent explanations of coverage decisions;

D.     Failing to conduct a prompt or reasonable investigation of the Drever Asbestos Suits on Drever's behalf;

E.     Failing and refusing timely or fully to perform known insuring obligations;

F.     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Insurance Policies;

G.     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Insurance Policies;

H.      Refusing timely or fully to pay claims without conducting a reasonable investigation based upon available information; and

I.      Forcing Drever to institute litigation to recover amounts due under the Insurance Policies.

57.     By the actions alleged herein, these defendants have deliberately, systematically, and repeatedly violated their duty of good faith and fair dealing.

58.     As a result of their breaches of good faith and fair dealing, these defendants must fully reimburse defense costs and indemnify Drever against any damages that the Drever incurs concerning Drever Asbestos Suits.

59.     Defendants' conduct was and is undertaken solely to avoid required payments under their Insurance Policies and to protect their own pecuniary interests at the expense of Drever's interests, and in violation of Drever's rights.

60.     As a direct and natural consequence of the above breaches, Drever is entitled to money damages in an amount to be proven at trial.

### *COUNT III*
### *BREACH OF DUTY TO DEFEND*
### *(Drever)*

61.     Plaintiffs repeat and reallege paragraphs 1 through 52 as if fully set forth herein.

62.     Drever has notified defendants of the Drever Asbestos Suits and has timely tendered the defense and indemnity of such claims to defendants, pursuant to the terms of the Insurance Policies covering plaintiffs.

63.     The duty to defend contained in the Insurance Policies issued to plaintiffs is triggered when a complaint makes allegations that potentially fall within the policy's coverage.

Once the defense obligation is triggered, each defendant is obligated to defend the entire action unless and until no potential for coverage exists.

64.     The Drever Asbestos Suits that have been timely tendered to these defendants under the Insurance Policies make allegations that are covered or are potentially covered by the Insurance Policies.

65.     Defendants have failed and refused timely or fully to pay the costs of Drever's defense of the Drever Asbestos Suits.

66.     By their failure timely or fully to defend Drever or to acknowledge their insuring obligations, defendants have breached their Insurance Policies.

67.     As a direct result of the foregoing breaches of contract, Drever has suffered and is entitled to recover money damages in an amount to be proven at trial.

### *COUNT IV*
### *Violation of 42 Pa. Stat. Ann. § 8371 and Pa. Stat. Ann. § 1171.5*
### *(Drever)*

68.     Plaintiffs repeat and reallege paragraphs 1 through 52 and 61 through 67 as if fully set forth herein.

69.     The Insurance Policies obligate defendants to defend Drever against the Drever Asbestos Suits.  In addition, these defendants are obligated fully to pay or reimburse Drever for payments made in connection with the Drever Asbestos Suits.  Drever has requested that defendants acknowledge and undertake their insuring obligations pursuant to the terms of the insurance agreements in connection with the Drever Asbestos Suits.  Defendants have failed or refused fully or timely to respond to Drever's demands for reimbursement or have otherwise fully or timely failed or refused to acknowledge, accept or undertake without reservation their contractual obligations.

70.     Defendants' actions, or failure or refusal to act, are willful, wanton, and malicious, without basis in law or fact, and have been and are undertaken by defendants solely to protect their own pecuniary interests at the expense of the interests of Drever, and in violation of Drever's known rights.  Defendants' actions, or failure or refusal to act, constitute a violation of 42 Pa. Stat. Ann. § 8371 and 40 Pa. Stat. Ann. § 1171.5, and include, but are not limited to, the following wrongful acts:

A.     Failing to provide prompt, reasonable or consistent explanations of coverage decisions;

B.     Failing to conduct prompt or reasonable investigation of the Drever Asbestos Suits on Drever's behalf;

C.     Failing and refusing fully or timely to perform known insuring obligations;

D.     Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under the Insurance Policies;

E.     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its Insurance Policies; and

F.     Compelling Drever to institute litigation to recover amounts due under the Insurance Policies providing coverage to Drever.

71.     By the actions alleged herein, defendants deliberately, systematically, and repeatedly violated 42 Pa. Stat. Ann. § 8371 and 40 Pa.  Stat. Ann. § 1171.5, which prohibit unfair insurance trade and settlement practices.  Defendants' actions, or failure or refusal to act, were performed with such frequency as to indicate a general business practice.

72.     Defendants' actions, or failure or refusal to act, were and are knowing, willful, wanton, intentional, deliberate, frivolous, and malicious, are without basis in law or fact, and

18

have been and are undertaken solely to avoid their required payments under the Insurance Policies and to protect their own pecuniary interests at the expense of Drever's interests, and in violation of Drever's known rights.

73.     As a result of its statutory violations, the Insurance Policies are without limitation and defendants will thus be responsible to defend and indemnify Drever completely against any loss resulting from the Drever Asbestos Suits.

74.     In light of the foregoing, and otherwise, these defendants may not enforce or attempt to enforce against Drever any purported contractual obligation, limitation or exclusion set forth in the Insurance Policies or any contractual term or condition allegedly running in their favor.

75.     In light of the foregoing, and otherwise, these defendants have an unlimited duty to pay for loss under their Insurance Policies, irrespective of any allegation that any such policy has a limit of liability, per occurrence, aggregate or otherwise.

76.     As a direct and natural consequence of the above statutory violations, Drever is entitled to money damages in an amount to be proven at trial.

77.     As a direct and natural consequence of defendants' statutory violations, Drever is entitled to punitive damages in an amount sufficient to deter future violations of § 8371 by these defendants and others, attorney fees and costs, interest on Drever's claims and damages in an amount to be determined at trial.

### *COUNT V*
### *Declaratory Judgment*
### *(Drever and Anchor Darling)*

78.     Plaintiffs repeat and reallege paragraphs 1 through 47 as if fully set forth herein.

79.     Plaintiffs seeks the following declarations:

A.     That the Insurance Policies are governed by the substantive law of the Commonwealth of Pennsylvania;

B.     That, under governing Pennsylvania law, each Asbestos Suit "triggers" all Insurance Policies with policy periods from the date of first alleged exposure to any asbestos-containing product up through and including the date of discovery, or "manifestation" of an asbestos-related disease, as provided for in *J.H. France Refractories Co. v. Allstate Ins. Co.,* 626 A.2d 502 (Pa. 1993);

C.     That the policyholder, under the governing law of the Commonwealth of Pennsylvania, decided by *J.H. France, supra,* may select the policy or policy years to which to assign or allocate Asbestos Suit-related loss;

D.     That, in the case of an insurer reserving its rights or refusing timely to accept defense and indemnity obligations without reservation, the policyholder may defend and settle Asbestos Suits in its discretion, without the consent or concurrence of said insurer;

E.     That, in the case of a claimed ambiguity in any Insurance Policy, such ambiguity shall be construed in favor of coverage;

F.     That defense costs for the Asbestos Suits are supplemental, and the payment of defense costs does not erode or impair any limit of liability of any of the Insurance Policies;

G.     That, if any allegation or part or cause of action in an Asbestos Suit is actually or potentially covered under the Insurance Policies, defendants must defend or reimburse the costs of defending against all of said allegations and causes of action contained in such complaint;

20

H.     That defendants are required to pay or reimburse all sums that the insured becomes legally obligated or reasonably required to pay as damages by reason of the Asbestos Suits;

I.     The Drever Asbestos Suits constitute one "occurrence" under the terms of the Insurance Policies;

J.     All retrospective premium obligations for all Insurance Policies for all Drever Asbestos Suits have been satisfied by payment to date in connection with the Drever Asbestos Suits;

K.     The Anchor Darling Asbestos Suits constitute one "occurrence" under the terms of the Insurance Policies; and

L.     Plaintiffs are obligated by the terms of the Insurance Policies to pay only one retrospective premium for the Anchor Darling Asbestos Suits.

## *Prayer for Relief*

WHEREFORE, plaintiffs demand judgment as follows:

A.     With respect to Counts I, II and III:

(1)     For money damages according to proof and trial and an order that defendants thereby are estopped from and have waived their ability to enforce any contractual obligation or provision running in favor of the defendants, including without limitation any purported contractual obligation, limitation or exclusion on the limits of liability;

(2)     Pre- and post-judgment interest; and

(3)     Attorneys' fees and costs.

B.     With respect to Count IV:

(1)     For money damages in accordance with proof at trial;

(2)      Punitive or exemplary damages;

(3)      Interest in plaintiffs' claims at the prime rate plus three percent (3%), as provided by statute and post-judgment interest; and

(4)      Attorneys' fees and costs.

C.      With respect to Count V, a declaration and order to the effect that:

(1)      The Insurance Policies are governed by the substantive law of the Commonwealth of Pennsylvania;

(2)      Under governing Pennsylvania law, each Asbestos Suit "triggers" all Insurance Policies with policy periods from the date of first alleged exposure to any asbestos-containing material up through and including the date of discovery, or "manifestation" of an asbestos-related diseases, as provided for in *J.H. France Refractories Co. v. Allstate Ins. Co.,* 626 A.2d 502 (Pa. 1993);

(3)      The policyholder, under the governing law of the Commonwealth of Pennsylvania, decided by *J.H. France, supra,* may select the policy or policy years to which to assign or allocate Asbestos Suit-related loss;

(4)      In the case of an insurer reserving its rights or refusing timely to accept defense and indemnity obligations without reservation, the policyholder may defend and settle Asbestos Suits in its discretion, without the consent or concurrence of said insurer;

(5)      In the case of a claimed ambiguity in any Insurance Policy such ambiguity shall be construed in favor of coverage;

(6)      Defense costs for the Asbestos Suits are supplemental, and the payment of defense costs does not erode or impair any limit of liability of any of the Insurance Policies;

(7)     If any allegation or part or portion of a complaint or cause of action in an Asbestos Suit is actually or potentially covered under the Insurance Policies, defendants must defend or reimburse the costs of defending against all allegations and causes of action contained in such complaint;

(8)     Defendants are required to pay or reimburse all sums that the insured becomes legally obligated or reasonably required to pay as damages by reason of the Asbestos Suits;

(9)     The Drever Asbestos Suits constitute one "occurrence" under the terms of the Insurance Policies;

(10)    All retrospective premium obligations for all Insurance Policies for all Drever Asbestos Suits have been satisfied by payment to date in connection with the Drever Asbestos Suits;

(11)    The Anchor Darling Asbestos Suits constitute one "occurrence" under the terms of the Insurance Policies; and

(12)    Plaintiffs are obligated by the terms of the Insurance Policies to pay only one retrospective premium for the Anchor Darling Asbestos Suits.

D.      On All Counts:

(1)     Such orders, including injunctive relief, as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

(2)     Such other and further relief as this Court deems just and proper.

### *JURY TRIAL DEMANDED*

Plaintiffs demand a trial by jury of any and all issues so triable.


DATED:    January 8, 2016                    Respectfully submitted,

                                             **MORGAN, LEWIS & BOCKIUS LLP**


                                             Paul A. Zevnik (Pa. I.D. No. 43453)
                                             Harvey Bartle, IV (Pa. ID No. 91566)
                                             1701 Market Street
                                             Philadelphia, Pennsylvania  19103-2921
                                             (215) 963-5000
                                             (215) 963-5001 (facsimile)


DB1/ 85522052.7

24